UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 1:02-CR-126 |
| v. ) | No. 1:08-CV-16 |
| ) | |
| TRAVIS J. WARE ) | Chief District Judge Curtis L. Collier |
| ) | |

**MEMORANDUM**

Travis J. Ware ("Ware") has filed a timely motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Crim. Court File No. 82). Ware contends counsel was ineffective for failing to challenge several aspects of his sentence.

Having reviewed the materials thus submitted, together with the record of the underlying criminal case, the Court finds they show conclusively Ware is not entitled to relief on the claims asserted; thus, an evidentiary hearing is not needed in this matter. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). Accordingly, the Court will decide the matter and explain the reasons Ware's asserted grounds for relief are without merit. Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

## I. BACKGROUND

### A. Procedural Background

Ware was indicted on August 27, 2002, along with a coconspirator, on the charge of conspiracy to distribute fifty grams or more of crack cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Crim. Court File No. 2). The grand jury also charged that on June 26, 2002, Ware possessed with intent to distribute five grams of more of crack cocaine in violation

of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and on June 28, 2002, Ware possessed with intent to distribute and indeterminate amount of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Crim. Court File No. 2).

On March 19, 2003, the United States filed a notice of enhancement pursuant to 21 U.S.C. § 851, advising Ware, if convicted, his sentence would be enhanced based on his prior felony drug convictions (Crim. Court File No. 38). Ware pleaded guilty on March 20, 2003, to Count Four, possession with intent to distribute five or more grams of crack, pursuant to a plea agreement (Crim. Court File Nos. 57, 42). On July 1, 2003, the United States filed a motion for a downward departure based upon Ware's substantial assistance (Crim. Court File No. 43).

Ware appeared for sentencing on July 11, 2003. The Court granted the United States' motion, departed one level below the then-mandatory United States Sentencing Guidelines ("USSG" or "Guidelines") range based upon Ware's substantial assistance, and sentenced Ware to 235 months, the lowest point of the reduced range, 235 to 293 months (Crim. Court File Nos. 48, 77). Judgment was entered on July 29, 2003, and a timely notice of appeal was filed on July 14, 2003 (Crim. Court File No. 48, 46).

Ware's counsel thereafter filed a motion to withdraw and an appellate brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) (Crim. Court File No. 59). The case was held in abeyance pending the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Ware's conviction was affirmed and the case was remanded for resentencing in light of *Booker* (Crim. Court File No. 59). On February 17, 2006, the Court re-sentenced Ware under the advisory Guidelines to the same term of imprisonment of 235 months (Crim. Court File No. 72).

Judgment was entered on March 1, 2006, and Ware filed a timely notice of appeal that same day (Crim. Court File Nos. 72, 73). Ware's sentence was affirmed on direct appeal on February 5, 2007 (Crim. Court File No. 80). Ware timely filed this 28 U.S.C. § 2255 motion on January 10, 2008 (Crim. Court File No. 82).

### B.  Factual Background

In the agreed factual basis, Ware stipulated to the following facts:

1.  On June 26, 2002, Det. Duff Brumley of the Cleveland Tennessee Police Department received a telephone call from a confidential informant (CI) who told him that Travis Ware and Gary Westfield intended to drive to Chattanooga, Tennessee and purchase a quantity of crack cocaine. The CI informed Brumley that they would be driving a blue four-door car which belonged to Tanika Bateman. Brumley was familiar with Ware and Westfield based on previous investigations. He was also aware that Bateman was Westfield's girlfriend and she owned such a car.

2.  Brumley called DEA Special Agent Ron Essenberg and they initiated surveillance. While they missed the car going to Chattanooga, they caught it coming back. A patrol unit pulled the car over. Ware, who was in the back seat, was squirming and the officers believed he was trying to hide something. Eric Moore, the driver, was asked to step out of the vehicle. He was nervous and slow to answer the questions. Although he initially granted consent to search the car, he changed his mind. The officers called for a drug dog. While they were waiting for the dog to arrive, the dispatcher advised the officers that Moore was driving on a suspended license.

3.  Westfield, who was wearing jeans but no shirt, was ordered out of the front passenger seat by Brumley. He was patted down by Brumley, who felt a round object in his crotch. Brumley realized the object was crack based upon his prior training and experience. Westfield was handcuffed and Ware was ordered out of the car. Brumley patted down Ware and felt a similar object in his crotch. Ware was cuffed. After obtaining gloves, Brumley removed a baggie containing 26.0 grams of crack cocaine, a small amount (0.6 grams) of marijuana and a pipe from Ware's underwear. Brumley recovered a baggie containing 26.7 grams of crack cocaine from Westfield's underwear.

4.  After his arrest, defendant Ware made statements that he had distributed crack cocaine in the past. The government would also present evidence that 26.0

3

grams of crack cocaine is a distribution amount which typically costs approximately $1,000.

(Crim. Court File No. 42).

## II.    STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

### III.  ANALYSIS

Ware asserts several claims of ineffective assistance of counsel. Ware alleges counsel was constitutionally ineffective for failing to (1) file a motion for pre-trial discovery; (2) file a pretrial challenge to the indictment; (3) adequately represent Ware during the suppression hearing; (4) rely on the lab report to challenge the amount of drugs seized on June 26, 2002, and charged in Count One; (5) preserve the denial of the suppression issue on appeal; (6) challenge the § 851 sentencing enhancement; and (7) represent Ware on appeal and filing an *Anders* brief. After a discussion of the applicable law, the Court will address the claims of ineffective assistance of counsel in turn.

    **A.**    **Applicable Law**

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### B. Failure to File a Motion for Pretrial Discovery

Ware first contends his attorney, John Eberly, was constitutionally deficient because counsel did not file a motion for pretrial discovery (Crim. Court File No. 5). Ware does not indicate what information would have been revealed resulting from a motion for pre-trial discovery. Ware has not met either prong of the *Strickland* standard regarding his claim of ineffective assistance of counsel by failure to file a motion for pretrial discovery.

The United States Court of Appeals for the Sixth Circuit has stated a reviewing court must presume "defense counsel has rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy." *United States v. Hinds*, 2 F. App'x 420, 421 (6th Cir. 2001) (quoting *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997)). "Trial strategy includes the decision not to file certain motions if, after investigation, doing so would not be necessary or advantageous." *Id.*

7

The record shows Ware's attorney filed a motion with the Court for authorization to hire an investigator, which the Court granted (Crim. Court File Nos. 20, 23). The United States asserts the material facts regarding Ware's offense conduct were revealed to Ware and his attorney at the start of the case and were developed fully during the detention and suppression hearings (Crim. Court File No. 89). Ware does not indicate in his motion what information would have been revealed from a motion for pretrial discovery that was not voluntarily reveaeld by the Government. He also does not argue a motion for pretrial discovery would have returned any material information regarding his offense. The failure of Ware's counsel to file a pretrial discovery motion does not amount to constitutionally deficient representation and there is no evidence of prejudice against Ware resulting from this omission. Thus the claim fails to meet either prong of the *Strickland* standard.

### C. Failure to Challenge the Indictment

Ware states he was incarcerated during 1999 until 2001, but Count One charged him with a conspiracy extending from fall 2001 to June 2002. Ware argues counsel was deficient in failing to raise a pretrial challenge to the indictment on the basis of a potential overlap in time (Crime Court File No. 83).

Count One was dismissed as to Ware and he does not challenge the count on which he was convicted (Crim. Court File No. 48). Since Count One had no effect on his case subsequent to his guilty plea, Ware cannot show prejudice from any alleged omission. Therefore, Ware's assertion his counsel deficiently represented him by failing to raise a pretrial challenge to Count One does not afford grounds for relief.

### D. Deficient Representation During Suppression Hearing

Ware contends counsel was constitutionally deficient during the suppression hearings because he allegedly failed to advise the Court that Ware was not arrested following the traffic stop and search on June 26, 2002 (Crim. Court File Nos. 82, 83). Ware also asserts the stop and pat-down search in general were illegal and a violation of his Fourth Amendment rights and counsel was deficient in failing to succeed on the suppression motion (Crim. Court File No. 83).

Whether or not a defendant is arrested is immaterial to the Fourth Amendment analysis, which considers the reasonableness of the officer's actions at the time of the stop and search based upon the totality of the circumstances. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Thus, following a traffic stop, a search may be permissible regardless of the officer's decision to release the suspect rather than take him into custody. *See United States v. Graham*, 483 F.3d 431, 440 (6th Cir. 2007) (protective search of vehicle was permissible because, where officer determined not to detain defendant after traffic stop, defendant would have access to potential weapon when he reentered the vehicle, posing a threat to officer safety).

The officer's decision not to arrest, detain, or prosecute Ware following the June 26, 2002, traffic stop had no effect in this case. Ware's attorney was not deficient in failing to raise this argument, nor was Ware prejudiced by such an omission. Thus Ware has failed to show counsel's actions were deficient under either prong of the *Strickland* test.

Ware also asserts the stop and pat-down search were illegal and a violation of his Fourth Amendment rights and counsel was deficient for failing to succeed in his argument for suppression. Police officers may briefly stop an individual for investigation if they have reasonable suspicion the person has committed a crime. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999). An ordinary traffic stop is more "akin to an

9

investigative detention rather than a custodial arrest." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176, 145 L. Ed. 2d 1110, 120 S. Ct. 1207 (2000). Reasonable suspicion is "more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity." *Houston*, 174 F.3d at 813 (alterations in original) (internal quotations and citation omitted). It requires "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' an investigatory stop." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The level of suspicion necessary for a police officer to stop a suspect is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Marxen*, 410 F.2d 326, 329 (6th Cir. 2005) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)), *cert. denied*, 546 S. Ct. 1220 (2006).

In *United States v. Slater*, 209 F. App'x 489 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 1898 (2007), the Sixth Circuit found the officer had reasonable suspicion to stop the defendant's vehicle based upon information he would be in possession of drugs while traveling at a certain time and place in a particular vehicle. *Id.* at 495-96. Once a stop has occurred, where there was reasonable suspicion a suspect was involved in drug trafficking, which involved weapons, a pat-down search for officer safety was lawful, as was the seizure of drugs the officer felt during the pat-down, which he recognized as contraband. *See United States v. Borne*, 239 F. App'x 185, 187 (6th Cir. 2007) (officer properly performed pat down search for weapons of suspected drug trafficker after traffic stop and permissibly found methamphetamine rock under "plain feel" doctrine, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993)).

In the case at bar, applying the settled principles of Fourth Amendment law, this Court correctly found the events of the traffic stop and the pat-down search were constitutionally permissible. Ware essentially asserts his attorney was deficient because the Court did not grant the motion to suppress. However, Ware's attorney properly argued for suppression, cross-examined the United States' witnesses at the suppression hearing, and objected appropriately to the Report and Recommendation. Further, Ware has not identified any factual or legal argument counsel should have made that he failed to make.

Ware has not provided any basis demonstrating, but for his attorney's representation, the Court would have granted the motion to suppress because, in fact and law, the suppression motion was properly denied. Ware has not met either prong of the *Strickland* standard.

### E. Failure to Contest the Drug Amount

Ware also contends counsel was deficient for failing to use the lab report to challenge the drug amount used by the probation officer in the Presentence Report ("PSR"). Ware argues the lab report showed he did not possess at least fifty grams of crack cocaine as charged in Count One and counsel was deficient in failing to make this argument (Crim. Court File No. 82). Ware's contention, in essence, is counsel was deficient for not challenging the drug amount attributed to him as part of his relevant conduct used in the calculation of his base offense level for sentencing.

The United States Sentencing Guidelines permit "[t]ypes and quantities of drugs not specified in the count of conviction [to] be considered in determining the offense level." USSG § 2D1.1 cmt. n.12 (citing USSG § 1B1.3(a)(2)). The Sixth Circuit has stated "the amount of drugs used to calculate a defendant's base offense level is not limited to the amounts involved in the

offense of conviction or charged in the indictment." *United States v. Davern*, 970 F.2d 1490, 1494 (6th Cir. 1992). Ware's argument that his offense level calculation should not have included the amount of crack cocaine his codefendant had on his person is contrary to the Guidelines and established common law.

Even if counsel had objected to the calculation of the drug amount, the objection would have had no effect on Ware's Guidelines calculation because he was sentenced as a career offender under USSG § 4B1.1. As a career offender, Ware's offense level was based on the statutory maximum sentence and not the amount of drugs attributed to him. USSG § 4B1.1(b) Since any change in the drug amount attributable to Ware would not alter his sentence, counsel's failure to object to the amount of drugs was not constitutionally deficient and Ware suffered no prejudice.

Ware has not demonstrated his attorney was deficient in failing to rely on the lab report to contest the drug amount, nor has he shown he was prejudiced in any way by any omission by counsel regarding the lab report. This claim provides no basis for relief.

### F. Failure to Preserve the Suppression Issue

Ware also contends counsel was deficient for failing to preserve the denial of the suppression motion for appeal (Crim. Court File No. 82).

The record shows the parties added a hand-written notation to the plea agreement, which Ware personally signed, agreeing if the Court rejected the Report and Recommendations regarding Ware's motion to suppress, Ware would preserve the suppression issue for direct appeal:

> MR. SULLIVAN: . . . Mr. Ware has signed a plea agreement whereby he has agreed to plead guilty to Count 4 of the indictment. . . . But there is also

language handwritten at the end of Mr. Ware's plea agreement that in the event the Court rejected the magistrate's [Report and Recommendations], then [Ware] would preserve that suppression issue even after they had signed the plea agreement.

(Crim. Court File No. 57 at 2). The parties noted the Court had adopted the Report and Recommendations and the conditional language in the Plea Agreement regarding the suppression issue was, therefore, moot (Crim. Court File Nos. 57 at 2, 37).

At Ware's rearraignment one month later, Ware acknowledged the plea agreement contained all of the understandings he had with the United States:

> THE COURT: Mr. Ware, is this your plea agreement?
> MR. WARE: Yes, sir.
> THE COURT: And does this plea agreement contain all the understandings that you have with the United States regarding this case?
> MR. WARE: Yes, sir.
> THE COURT: Are there any other understandings that you have with the United States regarding your case that are not set out in this written plea agreement?
> MR. WARE: No, sir.

(Crim. Court File No. 57 at 7). Since Ware pleaded guilty with full knowledge the suppression issue was not preserved for appeal, because the Court had adopted the Report and Recommendations, he cannot contend he would have pleaded "not guilty" but for counsel's failure to preserve the suppression issue for further review. The Court informed Ware:

> THE COURT: "[B]y pleading guilty, . . . you are giving up the right to plead not guilty and to persist in your earlier not guilty plea . . . Do you understand that by pleading guilty you are giving up [this] right. . .?
> MR. WARE: Yes, sir.

(Crim. Court File No. 57 at 5). Ware has not demonstrated counsel's failure to preserve the suppression issue was constitutionally deficient.

In addition the United States asserts it would not have agreed to a plea agreement where the suppression issue was preserved for appeal (Crim. Court File No. 89). Absent the United States' agreement, the plea agreement would not have been allowed. *See* Fed. R. Crim. P. 11(a)(2) (a defendant may enter a conditional plea only "[w]ith the consent of the court and the government"). Ware's counsel was not deficient in failing to preserve the appellate issue regarding the suppression ruling because counsel would not have been able to secure such an agreement. *See Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir. 2004). Ware has failed to show, but for the alleged omission by counsel, he would have gone to trial rather than plead guilty in order to preserve his right to appeal the denial of the suppression motion (Crim. Court File No. 57 at 5).

Ware has not shown counsel's failure to preserve the suppression issue for appeal was ineffective assistance of counsel nor has he demonstrated he was prejudiced by counsel's actions. Was claim of ineffective assistance of counsel with regard to the suppression issue are without merit.

### G. Failure to Challenge the 21 U.S.C. § 851 Sentencing Enhancement

Ware claims counsel was deficient for failing to challenge an alleged breach of the plea agreement based on the United States filing a notice of enhancement pursuant to 21 U.S.C. § 851, which Ware states was not in the plea agreement (Crim. Court File Nos. 82, 83). Ware contends at the time he entered into the plea agreement he had no knowledge of the § 851 enhancement and his counsel was deficient for failing to raise an objection based on his lack of knowledge (Crim. Court File No. 83).

The United States Code delineates the notice requirements for a criminal defendant's sentence to be enhanced due to prior convictions. Before trial or before the entry of a plea of guilty, the United States must "[file] an information with the court (and [serve] a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). The statute also states a defendant must file a written response if he "denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid." *Id.* § 851(c)(1). The requirements delineated in § 851 are mandatory, and a district court cannot enhance a defendant's sentence based on a prior conviction unless the government satisfies them. *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997).

On March 19, 2003, the United States filed its notice of enhancement under § 851 and certified that all parties had been properly served with a copy (Crim. Court File No. 38). In the notice the United States detailed the previous convictions used for the purposes of the § 851 enhancement (Crim. Court File No. 38). At the rearraignment hearing, the Court conducted the following inquiry:

> THE COURT: Mr. Sullivan, please advise these two defendants [Ware and codefendant] of the maximum punishment for these offenses and also if there is any mandatory minimum penalty that they face.
> MR. SULLIVAN: . . . Mr. Ware has a prior drug felony conviction - - actually a number of them, Judge. And we filed a notice pursuant to 21 U.S.C. 851 previous to this date. By virtue of that enhancement and the amount of drugs charged in Count 4, Mr. Ware is facing a mandatory minimum sentence of ten years in jail, a maximum of up to life, a fine of up to $4 million, supervised release for a period of at least eight years, and a 100-dollar special assessment.
> THE COURT: If the Court accepts your guilty [plea], you will be adjudged guilty of [this offense], and this may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to posses any kind of firearms. Knowing these penalties, do you still wish to plead guilty?

MR. WARE:  Yes, sir.

(Crim. Court File No. 57 at 10). Later the Court asked Ware if he understood that prior convictions possibly will increase his sentence and he responded "[y]es, sir" (Crim. Court File No. 57 at 13).

The record shows Ware was expressly informed of the § 851 enhancements during the Court's inquiry at the rearraignment hearing (Crim. Court File No. 57 at 11). Counsel was not deficient for failing to raise an objection due to Ware's lack of notice of the § 851 enhancements because, in fact and law, Ware was properly given notice by the United States on March 19, 2003, and expressly given notice during the rearraignment. *King*, 127 F.3d at 488-89.

Ware has not demonstrated counsel's assistance was constitutionally ineffective and he has not shown any prejudice from counsel's omission. Ware's claim alleging counsel was ineffective for failing to raise an object due to Ware's lack of notice of the § 851 enhancement is without merit.

      **H.**     **Failure to Adequately Represent Ware on Appeal**

Ware also argues counsel deficiently represented him by filing an *Anders* brief on direct appeal. The United States Supreme Court has established a procedure for cases involving appointed counsel in apparent no-merit cases: if counsel finds the case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. The request must be accompanied by a brief referring to anything in the record that might arguably support the appeal. *Anders v. California*, 386 U.S. 738 (1967). The Sixth Circuit has also held "counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the

result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2000). Further, "if there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amount to ineffective assistance of appellate counsel." *Id.* at 700.

Here, Ware's counsel filed an appellate brief with the Sixth Circuit and also a motion to withdraw pursuant to *Anders*. Counsel analyzed whether the district court erred by denying the motion to suppress, but concluded no meritorious grounds for appeal existed. The court agreed, stating "Ware did not reserve the right to appeal the denial of the motion to suppress in his plea agreement and thus has forfeited the issue" (Crim. Court File No. 59).

Counsel acted properly by filing the *Anders* brief stating there were no meritorious claims for appeal regarding the suppression issue in accordance with the standards delineated by the Supreme Court. *Anders*, 386 U.S. 738. Ware's complaint counsel was deficient by recommending he plead guilty unconditionally then filing an *Anders* brief on direct appeal, thus failing to preserve or advance the suppression issue on appeal, provides no basis for either vacating his conviction or his sentence. Ware has not met either prong of the *Strickland* standard regarding this claim.

In sum, there is no basis to Ware's claim of ineffective assistance of counsel and Ware has not shown any prejudice from counsel's omissions. Ware's claims alleging ineffective assistance of counsel are without merit.

## IV. CONCLUSION

For the reasons stated above, Ware is not entitled to any relief under 28 U.S.C. § 2255 as his sentence does not violate the Constitution or laws of the United States. Accordingly, Ware's

motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**